IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| ANTHONY PARKER | ) |
| | ) |
| v. | ) NO. 1:20-00003 |
| | ) |
| MAGNA SEATING, INC. | ) |

**To: Honorable William L. Campbell, Jr., District Judge**

# REPORT AND RECOMMENDATION

By Order entered March 5. 2020 (Docket Entry No. 6), the Court referred this *pro se* and *in forma pauperis* case to the Magistrate Judge for pretrial proceedings pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court is Defendant's motion for summary judgment (Docket Entry No. 30), to which Plaintiff has filed a response in opposition. *See* Docket Entry Nos. 36-38. For the reasons set out below, the undersigned respectfully recommends that the motion be granted and that this case be dismissed.

## I. PROCEDURAL BACKGROUND

Anthony Parker ("Plaintiff") is a resident of Murfreesboro, Tennessee. On January 21, 2020, he filed this *pro se* and *in forma pauperis* lawsuit against his former employer, Magna Seating of America, Inc., d/b/a Spring Hill Seating Systems ("Magna" or "Defendant"). *See* Complaint (Docket Entry No. 1). Magna is a national company that manufactures automotive

parts at different locations. During 2018, Plaintiff was briefly employed in a supervisory capacity at Magna's manufacturing facility in Spring Hill, Tennessee prior to being terminated on December 5, 2018. Plaintiff alleges that he suffered unlawful disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.,* when he was terminated from his job and because he was denied certain work benefits, such as insurance coverage. *Id*. at 7-8. He also brings a claim under state law for breach of an employment contract and a claim under state law for tortious interference with a business relationship. *Id*. at 6-7; Amended Complaint (Docket Entry No. 15).[1] Plaintiff seeks damages and demands a jury trial.

Prior to filing his lawsuit, Plaintiff filed a charge of discrimination ("Charge") with the Tennessee Human Rights Commission on December 18, 2018.[2] On January 7, 2020, the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a right to sue letter.[3] The instant lawsuit was filed within 90 days from the right to sue letter.

Defendant has filed answers to the complaint and amended complaint, denying the allegations of wrongdoing. *See* Docket Entry Nos. 11 and 16. Pursuant to a scheduling order (Docket Entry No. 13), the parties were provided with a period of time for discovery and pretrial activity in the case. Other than Defendant's motion for summary judgment, there are no other motions that are pending in the case.

---

[1] Although Plaintiff also asserted a claim under state law for a violation of the Tennessee Public Protection Act, the Court dismissed this claim upon initial review of the complaint under 28 U.S.C. § 1915(e)(2)(B). See Memorandum (Docket Entry No. 5) at 8-9.
[2] *See* Docket Entry No. 33-14 at 13-16.
[3] *See* Docket Entry No. 1-8.

2

## II. FACTUAL BACKGROUND

Plaintiff began working for Defendant on October 20, 2018, as a Just-in-Time ("JIT") Supervisor on the third shift after he was offered the position via an offer letter, dated August 18, 2018 ("Offer Letter").[4] The Offer Letter summarized the salary, effective start date, benefits, and other matters for the position. It also provided that Plaintiff was subject to a three month "Introductory Period," during which he was not entitled to benefits and could be terminated without cause, prior notice, or payment in lieu thereof. The Offer Letter provided that, upon successful completion of the Introductory Period, he would be entitled to all benefit programs generally available to salaried employees and to severance pay of 2 weeks base salary if he was terminated without notice and without cause. The Offer Letter provided that Plaintiff could be terminated at any time for cause. Plaintiff's employment was not for a definite term, and Plaintiff signed a written acknowledgment that he understood that his employment was "at-will."[5]

Plaintiff also signed an acknowledgment that he agreed to comply with the policies set out in Magna's employee handbook.[6] Among these policies are attendance policies.[7] These policies provide that, in the event an employee has an absence that is not pre-approved, the employee must call their supervisor and advise them of the reason for the absence and when the employee expects to return to work. If an employee fails to call in after three consecutive absences, Defendant may deem the employee to have abandoned or resigned their employment. If an employee's absence extends more than three (3) consecutive days, the employee is required to provide a doctor's note

---

[4] *See* Docket Entry No. 33-2.
[5] *See* Docket Entry No. 33-4.
[6] *Id.*
[7] *See* Docket Entry No. 33-3 at 7-8 and 21-22.

containing, among other things, the dates that the employee was unable to work, the date the physician believes the employee can return to work, the reason for absence, and a clear explanation of any physical restrictions that may apply. Each doctor's note can only cover up to seven days of absences.

Plaintiff has a history of radiculopathy, cervical spine stenosis, osteoarthritis, and related medical issues that dates back to 2014 and for which he has received treatment and therapy over the years. Plaintiff did not alert Defendant to these issues or request any medical accommodations upon beginning his employment.[8] Plaintiff contends that, at some point in mid-October 2018, he began to experience pain in his right forearm, alerted his supervisor, and left work. While the exact date when he left work is unclear,[9] it is undisputed that the last day that Plaintiff worked was October 25, 2018, that he did not appear for work on October 26, 2018, and that he continuously remained out of work from that date until his termination on December 5, 2018.

After leaving work on October 25, 2018, Plaintiff communicated with Steve Falter ("Falter"), Defendant's Human Resources Manager and Supervisor George Johnson, and he provided a series of doctor's notes over the next several weeks. The doctors' notes were somewhat cursory and merely stated that: (1) Plaintiff should be excused from work from October 26-29, 2018, because of "muscle and back pain with radiculopathy;"[10] (2) Plaintiff should be "off work"

---

[8] *See* Plaintiff's Deposition Transcript ("Deposition") (Docket Entry No. 33-1) at 77 and 109.

[9] Defendant contends that Plaintiff's time records show that he left work on October 25, 2018. S*ee* SUMF at 25. Plaintiff does not dispute this, but he testified at his deposition that he alerted his supervisor to his arm pain and left work on October 16, 2018. *See* Deposition at 104-05. However, this factual question is not material to resolution of the claims in this case.

[10] *See* Docket Entry No. 33-5.

from October 26 through November 2, 2018;[11] (3) Plaintiff was seen on November 2, 2018, and may return to work on November 12, 2018;[12] and, (4) Plaintiff was seen on November 12, 2018, and may return to work on November 17, 2018.[13] The doctor's notes did not include any work restrictions or otherwise note any limitations because of Plaintiff's medical issues.

Because the final doctor's note excused Plaintiff from work only until November 17, 2018. Falter e-mailed Plaintiff on November 17, 2018, inquiring if he intended to come to work the following day. Plaintiff responded via e-mail, stating that he would "be sending another doctor's note shortly for later return to work date." Although Falter replied to Plaintiff that day and reminded him of his duty to keep the company updated on his status, advised him that his poor communication with Magna could not continue, and requested a firm return to work date, Plaintiff did not send another doctor's note to Falter or otherwise communicate with him. On November 20, 2018, Falter again e-mailed Plaintiff about his status and expected return date.[14]

Between November 18 and November 28, 2018, Plaintiff did not provide any type of doctor's note to Falter or otherwise communicate with him, and Falter sent Plaintiff an e-mail on November 28, 2018, attaching a letter that addressed his continued absence from work and his failure to communicate about his situation and provide an updated doctor's note to support his absences from November 17-28, 2018.[15] The letter further informed Plaintiff that if he did not contact Falter by December 5, 2018, Magna would assume that Plaintiff did not wish to continue his employment and would terminate his employment. Plaintiff did not respond in any manner to

---

[11] *See* Docket Entry No. 37-1 at 13.
[12] *See* Docket Entry No. 33-6.
[13] *See* Docket Entry No. 33-7.
[14] *See* Docket Entry No. 33-8.
[15] *See* Docket Entry No. 33-9.

Falter or provide a doctor's note, and his employment was terminated by Defendant, effective December 5, 2018.

Plaintiff saw a medical provider in early December and obtained a doctor's note that extended his absence from work until December 18, 2020.[16] However, Plaintiff did not provide this note to Falter at any time prior to or after his termination or to anyone else at the plant prior to his termination. Instead, he provided it on December 13, 2018, to an ethics hotline employee of Defendant, included it with his Charge, and included it with an appeal that he filed from the denial of his application for short term benefits.[17]

At some point in late October or early November, Plaintiff filed a claim for short-term disability ("STD") benefits through The Hartford Insurance Company ("Hartford"), the STD benefits provider for Defendant. Hartford informed Plaintiff by letter, dated December 10, 2018, that his claim was denied because he had not completed his eligibility waiting period with Defendant and thus was not covered under the STD plan at the time when he became disabled.[18] The denial of the claim was upheld on February 4, 2019, upon Plaintiff's appeal.[19]

### III. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendant argues that it is entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Defendant contends that Plaintiff cannot establish a *prima facie* case of disability discrimination because there is no evidence that he falls into the category of having a

---

[16] *See* Docket Entry No. 33-15 at 3-4.
[17] *See* Deposition at 111.
[18] *See* Docket Entry No. 33-10.
[19] *See* Docket Entry No. 33-11.

disability as defined by the ADA at the time of his employment and termination. Defendant further contends that, even assuming that Plaintiff could establish a *prima facie* case of disability discrimination, Defendant terminated Plaintiff's employment because of his failure to abide by Defendant's attendance policies, not because of disability discrimination or retaliation, and that Plaintiff has no evidence to support a claim that Defendant's reason was mere pretext for unlawful discrimination or retaliation. Finally, Defendant argues that Plaintiff fails to provide any evidence supporting a viable state law claim for breach of contract or tortious interference with a business relationship. Defendant supports its motion with a memorandum of law (Docket Entry No. 31), a statement of undisputed material facts (Docket Entry No. 32), Plaintiff's deposition transcript (Docket Entry No. 33-1) and exhibits attached thereto (Docket Entry Nos. 33-2 to 33-12), a copy of Defendant's interrogatories to Plaintiff and his responses (Docket Entry Nos. 33-12 and 33-13), and the affidavits and exhibits attached thereto of Steve Falter (Docket Entry No. 14) and Benjamin Lemly (Docket Entry No. 33-15).

In response, Plaintiff first argues that Defendant's motion "may be untimely filed." See Response (Docket Entry No. 36) at 1. Plaintiff further argues that he has been denied discovery and that certain facts that would help prove his ADA claims are unavailable to him. As to the merits of his claims, Plaintiff argues that he has provided medical evidence showing that he has an impairment lasting longer than six months and that he was terminated and denied benefits even though he was under a doctor's care and had a doctor's note excusing his work absences until December 18, 2018. He also asserts that the attendance policies were not applied to other employees. He contends that these facts are sufficient to support his claims and points to both factual issues that he believes a jury should resolve and false statements and/or "perjury" about

7

factual matters that he contends Defendant has made in its filings.  Plaintiff supports his response with a memorandum (Docket Entry No. 37), several pages of documents as exhibits (Docket Entry Nos. 37-1), and a response to Defendant's SUMF (Docket Entry No. 38).

In reply, Defendant contends that nothing raised by Plaintiff in his response adequately rebuts the legal arguments for summary judgment set out in its motion, that much of Plaintiff's response is procedurally improper, and that the majority of evidence filed by Plaintiff is inadmissible or irrelevant.  *See* Defendant's Reply (Docket Entry No. 39).

## IV.  STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Federal Rule of Civil Procedure 56(a).  "By its very terms, this standard provides that the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).  In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that it believes demonstrate the absence of a genuine dispute over material

facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018); Rule 56(c)(1)(A). Once the moving party has met this burden, the nonmoving party is not entitled to a trial merely on the basis of allegations but must present evidence supporting its claims or defenses. *See Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

## V. ANALYSIS

Summary judgment should be granted to Defendant on all claims brought by Plaintiff. As set out below, the evidence supporting Plaintiff's claims, even when viewed in the light most favorable to him as the non-moving party, is so lacking that a reasonable jury could not find in his favor. Any factual issues that exist do not rise to the level of genuine issues of material fact that require resolution at trial.

A. Plaintiff's Technical Arguments against Summary Judgment and *pro se* Response

Plaintiff raises two technical arguments in his response to the summary judgment motion. Both arguments lack merit. First, Plaintiff suggests that the motion for summary judgment was not timely filed. *See* Plaintiff's Response at 1. However, the motion was timely filed on October 9, 2020, in accordance with the Court's scheduling order. Second, Plaintiff asserts that he was denied discovery. *See* Plaintiff's Memorandum at 2 and 8-9. However, Plaintiff has not been denied

discovery or the opportunity to collect the evidence he needs to support his claims. Like Defendant, Plaintiff was given a period of time to conduct discovery in this case pursuant to the Court's scheduling order, but Plaintiff's motion to compel discovery from Defendant was denied as untimely filed and because he had not served timely, formal discovery upon Defendant. *See* Order entered October 13, 2020 (Docket Entry No. 35). Plaintiff has failed to show that he is entitled to any relief under Rule 56(d) from a decision on the motion for summary judgment because facts are unavailable to him.

Like many *pro se* parties who file a response to a motion for summary judgment, Plaintiff's response suffers from certain shortcomings that cannot be disregarded simply because Plaintiff is proceeding *pro se*.[20] First, his response is not supported by affidavits or by declarations that are sworn under the penalty of perjury. Unsworn statements of fact cannot be considered as evidence rebutting a motion for summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970); *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991).

Second, although Plaintiff did file a response to Defendant's SUMF and filed five supporting exhibits, his response includes many unsworn factual statements and includes minimal citations to the record in support of his assertions of factual disputes. Such citations to the record are required by Federal Rule 56(c)(1) and Local Rule 56.01(c). Plaintiff must specifically point to the evidence in the record that supports his assertion of factual disputes. Merely referring the

---

[20] Although Plaintiff proceeds *pro se,* he is not an inexperienced litigator, having filed several other cases in this district alone. *See Parker v. Marque of Brands Americas, LLC*, 3:20-001033; *Parker v. Comprehensive Logistics, Inc.*, 1:19-00013; *Parker v. Comprehensive Logistics Co., Inc.*, 1:18-00065.

10

Court to his memorandum of law is not sufficient. Nonetheless, in light of Plaintiff's *pro se* status, the Court has given Plaintiff a great measure of leeway in the consideration of his response to the motion for summary judgment.

B. ADA Claims

Plaintiff claims that (1) he was terminated from his employment and denied work related benefits, such as insurance, because of disability discrimination and (2) he was retaliated against "for reporting a preexisting medical condition prior to job termination." *See* Complaint at ¶ 19. After review of the evidence before the Court and the parties' arguments as to these claims, the Court finds that Defendant is entitled to summary judgement on both claims.

The ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" with regard to hiring, advancement, training, termination, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA further prohibits an employer from discriminating against an employee because the employee "opposed any act or practice made unlawful by this chapter" or because the employee "made a charge, testified, assisted, or participated in any manner in an investigation" under the statute. 42 U.S.C. § 12203.

As an initial matter, Plaintiff fails to make an adequate showing that he was "disabled" under the ADA at the time of the alleged unlawful actions. A threshold burden for a plaintiff bringing a disability discrimination claim under the ADA is showing that the plaintiff has a disability. *Saenz v. LRC Restuarant Nashville, LLC*, 2020 WL 758814 at *3 (M.D.Tenn. Feb. 14, 2020) (Richardson, J.). The ADA defines a disability as "(A) a physical or mental impairment that

substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Although the definition of a disability is to be construed broadly in favor of expansive coverage, a plaintiff asserting a disability discrimination claim must nonetheless set forth evidence satisfying the showing of a disability under the ADA.

Plaintiff fails to meet this threshold burden. Although Plaintiff has provided a few medical records showing that he suffers from a physical impairment and argues that this evidence shows that he is disabled, evidence that he has a physical impairment or medical condition is not conclusive proof that meets the threshold burden because "not every impairment will constitute a disability." 29 C.F.R. § 1630.2(j)(1)(ii). Merely being under the care of a doctor for a medical problem is not in and of itself sufficient to show a disability. *See Rader v. Upper Cumberland Hum. Res. Agency*, 171 F.Supp.3d 751, 758 (M.D.Tenn. 2016). There must be evidence that the physical impairment (1) substantially limits (2) one or more of Plaintiff's major life activities. *Id*. Plaintiff simply has not provided any evidence as to these factors or even presented any argument on the issue. Given Plaintiff's failure to point to evidence in the record satisfying his burden of showing that he had a disability or a record of a disability, Defendant is entitled to summary judgment on Plaintiff's ADA disability discrimination claim for this reason alone. *See Booth v. Nissan N. Am., Inc.*, 927 F.3d 387, 394 (6th Cir.), *cert. denied*, 140 S. Ct. 454 (2019), *reh'g denied*, 140 S. Ct. 927 (2020) (defendant employer was entitled to summary judgment on ADA claim because plaintiff's evidence of a neck injury and related work restrictions was not sufficient to show that he was disabled); *Tinsley v. Caterpillar Fin. Servs., Corp.*, 766 Fed.App'x 337, 341-44 (6th Cir. 2019) (defendant employer was entitled to summary judgment because plaintiff failed to

12

provide evidence that asserted medical condition substantially limited a major life activity); *Saenz, supra*.[21]

Even if Plaintiff had met his burden of showing a disability and satisfied a *prima facie* case of disability discrimination, his ADA claim would still lack merit. Defendant sets forth evidence that Plaintiff was terminated from his employment because of his continuous absences from work for the nearly three weeks that preceded his termination and his failure to follow Defendant's notification and excuse policies for these work absences. In the face of this legitimate, non-discriminatory reason for the challenged employment action, Plaintiff must show that this reason was actually pretext for unlawful discrimination by setting forth evidence that "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 539 (6th Cir. 2014) (*quoting Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (*en banc*)).[22] Evaluating pretext "is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009).

Plaintiff fails to provide evidence of pretext that is sufficient to raise a genuine issue of material fact. Plaintiff does not dispute that he failed to contact Falter between November 18,

---

[21] Plaintiff offers no evidence showing that Defendant "regarded" him as disabled.
[22] Because Plaintiff has no direct evidence supporting his claim of disability discrimination, his claim is analyzed under the *McDonnell Douglas* burden-shifting framework, which requires him to first show a *prima facie* case and then to make a showing, by a preponderance of the evidence, of pretext upon Defendant's proffered explanation of a legitimate, non-discriminatory reason for the challenged employment action. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-92 (6th Cir. 2016).

2018, and December 5, 2018. Although Plaintiff's responses to Defendant's SUMF imply that he timely communicated with Defendant, *see* Response to SUMF at ¶¶ 48, 50, 52, and 54, he offers no evidentiary support for these responses, and his deposition testimony is that he did not communicate with Falter after November 17, 2018. *See* Deposition at 89-90, 96-97, and 111. A party may not create a factual issue through filings that contradict its own earlier deposition testimony. *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). While Plaintiff eventually obtained a doctor's note stating that he should be excused from work until December 18, 2018, the undisputed evidence shows that the note was never given to Falter prior to the decision to terminate Plaintiff's employment and was not given to anyone at Magna until sometime around December 13, 2018, when Plaintiff spoke to someone on Defendant's "ethics hotline." *See* Deposition at 89-90, 96-97, and 111. The only reasonable reading of the evidence before the Court is that Plaintiff was terminated from his employment because of his continuous unexcused absences from work during the period that preceded his termination and because of his failure to follow Defendant's notification and excuse policies for work absences. There is no evidence before the Court that shows, or even reasonably infers, that disability discrimination played any part in the workplace decisions made by Defendant with respect to Plaintiff.[23]

Likewise, there is no evidence supporting a claim that Plaintiff was denied workplace insurance or other benefits because of disability discrimination. As noted *supra*, the lack of

---

[23] Although Plaintiff appears to assert that he was treated differently than an unidentified "UAW Team Leader" with respect to the consequence of being absent from work, *see* Plaintiff's Memorandum at 2 and 5, Plaintiff has not supported his vague assertion with any actual evidence, let alone provided an evidentiary basis to show that he was similarly situated with the another employee in all respects yet was treated differently with respect to Defendant's employee attendance policies and thus Defendant's stated reason for terminating Plaintiff's employment should be viewed with skepticism.

evidence that Plaintiff had a disability under the ADA is a sufficient basis for dismissal of this claim in favor of Defendant. Furthermore, the only reasonable conclusion that can be reached from the evidence before the Court is that Plaintiff was denied STD benefits, not as an act of disability discrimination, but because he had not completed the introductory period and was not entitled to the benefits at the time he made application for the benefits. There is no evidence before the Court that would support an argument that pretext existed regarding the denial of STD benefits to Plaintiff.

Plaintiff also has no evidence supporting a claim that he suffered retaliatory action at the hands of Defendant. Because Plaintiff has no direct evidence supporting such a claim, he must establish a *prima facie* case of retaliation based upon circumstantial evidence by showing that (1) he engaged in activity protected under the ADA; (2) Defendant knew of that activity; (3) Defendant took an adverse action against Plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). If Plaintiff satisfies the *prima facie* case, the claim proceeds to the pretext stage of the analysis.

Plaintiff's retaliation claim fails at the *prima facie* level because there is no evidence that he engaged in a protected activity under the ADA. It is undisputed that Plaintiff did not alert Defendant to any disability or make a request for a workplace accommodation for a disability.[24] Further it is undisputed that at no time prior to his termination did Plaintiff file an internal complaint with Defendant or a formal charge about his need for a disability accommodation or about disability discrimination. Plaintiff's only action was to alert work supervisors about pain in

---

[24] *See* Deposition at 77 and 109.

15

Case 1:20-cv-00003    Document 40    Filed 05/14/21    Page 15 of 19 PageID #: 645

his arm, leave work to never again return, and then provide a few minimally informative doctor's notes that excused part of the time he was absent from work. In such a scenario, Plaintiff cannot reasonably be found to have engaged in protected activity under the ADA. *See Neely v. Benchmark Fam. Servs.*, 640 Fed.App'x 429, 437 (6th Cir. 2016) (defendant employer entitled to summary judgment on ADA retaliation claim when the plaintiff asserted protected conduct was merely complaining and discussing his medical issues with his supervisor). Further, even if Plaintiff had shown a *prima facie* case, this claim suffers from the same lack of evidence of pretext as does his ADA discrimination claim. Defendant is therefore entitled to summary judgment on the claim.

C. Breach of Contract Claim

Plaintiff's breach of contract claim lacks merit, and Defendant is entitled to summary judgment on this claim. In his complaint, Plaintiff does not appear to actually contend that he was wrongfully terminated. To the extent that he brought such a claim, the claim would be readily subject to dismissal because his employment with Defendant was undisputedly an employment-at-will situation and was not for the type of definite term that supports the filing of a breach of contract claim based upon wrongful termination. Employment-at-will "is a bedrock of Tennessee common law," *Franklin v. Swift Transp. Co.*, 210 S.W.3d 521, 527 (Tenn. App. 2006), and courts presume that employment contracts are indefinite and terminable by a party for good, bad, or no cause at all when there is no term of employment set out in the employment contract. *McClaren v. Keystone Memphis, LLC*, 2010 WL 56084 at *4 (W.D. Tenn. Jan. 5, 2010).

What Plaintiff actually appears to argue is that he was entitled to and denied work related benefits for the short period of time between the expiration of the 90 day introductory period on

16

November 19, 2018, and his termination on December 5, 2018. *See* Complaint at ¶¶ 46-59. He claims that he was denied STD benefits, denied medical insurance coverage, denied payment for vacation days that he should have accrued, and denied severance pay. *Id*. Such a claim is completely baseless. Plaintiff left work on October 25, 2018, prior to completion of the introductory period and never returned to work again. While he provided a few doctor's notes for the first weeks of his absence, he eventually stopped communicating with Defendant about his absence and his return to work, failed to provide updated doctor's notes, failed to specifically respond to communications from Falter, and failed to follow Defendant's employee policies regarding being absent from work. Further, Plaintiff's final doctor's note to Defendant excused him from work only until November 17, 2018, which was still within the 90 day introductory period.

Plaintiff has not made a legally or factually supported argument that he satisfactorily completed the 90 day introductory period and thus was even presumptively entitled to any benefits. The undisputed evidence further shows that, with respect to the STD benefits, Plaintiff was not eligible for such benefits at the time of his application for them. Given his lengthy unexcused absence from work and his failure to follow Defendant's employee policies, he was ultimately terminated by Defendant for cause, and he has failed to make a legally or factually supported argument that he was satisfactorily performing the terms of his employment agreement with Defendant, let alone that Defendant committed a breach of the employment agreement. There are simply no facts before the Court that support a claim that Defendant breached an agreement with Plaintiff and wrongfully denied him any employment benefits.

D. Tortious Interference with Business Relationship Claim

Although this claim is not well formulated in Plaintiff's amended complaint, Plaintiff appears to assert that Defendant tortiously interfered with his ability to obtain STD benefits from the STD carrier. A plaintiff pursuing a claim based upon the allegation of a tortious interference with a business relationship must prove the following: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means, and, (5) damages resulting from the tortious interference. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

Defendant is entitled to summary judgment on this claim because the claim is factually unsupported and legally meritless. Even assuming that Plaintiff had an "existing business relationship" with the STD carrier, he has offered no evidence that Defendant intended to cause a breach of that relationship, let alone evidence that Defendant acted with an improper motive or means. The evidence shows only that Plaintiff's application for STD benefits was denied because he was not eligible for the benefits at the time of his application. This evidence falls far short of supporting any reasonable conclusion that Defendant acted with a tortious intent to cause a breach. Furthermore, because the damages sought by Plaintiff encompass payment of "the benefits that he is entitled to under the Plan," *see* Amended Complaint at 8, his claim would appear to be pre-empted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

See *Hutchison v. Fifth Third Bancorp*, 469 F.3d 583, 587 (6th Cir. 2006); *Steele v. United Parcel Serv., Inc.*, 499 F.Supp.2d 1035, 1040 (E.D. Tenn. 2007).

## R E C O M M E N D A T I O N

For the reasons set out above, it is respectfully RECOMMENDED that Defendant's motion for summary judgment (Docket Entry No. 30) be GRANTED and that this case be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

19

Case 1:20-cv-00003   Document 40   Filed 05/14/21   Page 19 of 19 PageID #: 649